(81 N. W. Rep. 51.)

---

ANNA DAY GRAHAM *vs.* ANDREW SMITH GRAHAM.

Opinion filed November 16, 1899.

**Divorce—Residence—Domicile—Jurisdiction.**

Section 2755, Revised Codes, construed, and *held* that the word "resident," as used in said section, is equivalent in meaning to the word "domicile."

**Jurisdiction—Mere Temporary Residence in the State for Divorce Purposes Insufficient.**

*Held,* further, that a resident of another state cannot acquire a domicile in this state simply by coming within the state and remaining here physically for the requisite statutory period. To bodily presence within the state there must be added the present bona fide purpose of abiding here indefinitely as a home. Under the evidence in this case, *held,* that plaintiff was not domiciled in this state for a period of ninety days prior to instituting this action, and hence that the courts of this state were without jurisdiction to entertain her action for a divorce from the bonds of matrimony.

Appeal from District Court, Richland County; *Lauder,* J.

Suit by Anna Day Graham against Andrew Smith Graham. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Aaron J. Bessie* and *Lyman B. Everdell,* for appellant.

*McCumber & Bogart* and *Jos. G. Forbes,* for respondent.

WALLIN, J. This action was brought to obtain a divorce from the bonds of matrimony upon the alleged ground that the defendant willfully neglected to provide for the plaintiff the common necessaries of life, although the defendant possessed the ability to do so. The trial court found as a fact "that the plaintiff was not at the time of the commencement of this action an actual and bona fide resident of the State of North Dakota." Upon this finding the trial court (without making further findings of fact) denied the divorce, and

thereafter a judgment was entered dismissing the action, with costs. From such judgment the plaintiff has appealed, and now seeks a retrial of the entire case in this court.

We shall have occasion to consider only the question of residence. At the time the action was instituted the statute declared that "a divorce must not be granted unless the plaintiff has in good faith been a resident of the state ninety days next preceding the commencement of the action." Rev. Codes, § 2755. It has been held by this court and it is now a well-settled rule of statutory construction that "the word 'residence' in statutes giving jurisdiction is interpreted to mean the same as 'domicile.'" *Smith* v. *Smith,* 7 N. D. 404, 75 N. W. Rep. 783. It follows that the question of fact which was passed upon by the trial court, and which we are to try anew, is whether the plaintiff had, for a period of ninety days prior to the commencement of this action, been a resident of this state, in the sense of having her domicile in this state for that length of time. The term "domicile" has been defined in different language by courts and law writers. A terse definition is as follows: " 'Domicile' is the place where the person has fixed his habitation, without any present intention of removing therefrom." See 2 Bish. Mar., Div. & Sep. § 88, note 1. This definition, while it has met with the approval of some courts, is in our judgment too narrow, unless the intention to remove be limited to the time of fixing the residence. The mere fact of an existing intention to remove from the place where one is domiciled cannot, we think, operate against the bona fides of residence. The existence of a mere purpose to go elsewhere to live is not, in our opinion, sufficient to defeat a legal residence in the place where a person is actually domiciled. In such case, until an actual removal occurs, the residence continues to be where the person has acquired a residence in good faith, with the intention of dwelling there indefinitely as a home; but the residence must be originally acquired by taking up one's abode in a place with a good-faith purpose to dwell therein as a home for an indefinite period. Domicile, when based on a claim of removal from a former place of residence, can be made out only by showing that there has been an actual removal, followed by residence in fact in the new place of abode, and coupled with a present intention to dwell in the new place indefinitely as a home. These views of the law of domicile are no longer open to debate in the courts of this country. See *Cook* v. *Cook,* 56 Wis. 195, 14 N. W. Rep. 33, 443; *Albee* v. *Albee,* 43 Ill. App. 370; *Dunham* v. *Dunham* (Ill. Sup.) 44 N. E. Rep. 841; 1 Nels. Div. & Sep. § 40. It is settled in this state, also, that the mere fact that the plaintiff in an action for divorce was led to take up his domicile in this state for the reason that liberal laws exist here upon the subject of divorce does not defeat the bona fides of the residence. See *Smith* v. *Smith,* supra. But, on the other hand, if one comes into this state for the sole purpose of acquiring a pretended residence,—all the time intending to remove from the

state and live elsewhere as soon as the divorce is granted,—such pretended residence is not sufficient to give the courts of this state jurisdiction to grant a divorce. See *Colburn* v. *Colburn* (Mich.) 38 N. W. Rep. 607.

In the light of these rules of law, we have examined the record attentively,—which embraces all the evidence offered at the trial,— and have reached the conclusion that the trial court was correct in finding that the plaintiff was not a bona fide resident of this state when she commenced this action; and we are further constrained by the evidence to hold that plaintiff's sojourn in this state has been transient merely, and for the purpose of establishing a fictitious residence for divorce purposes only.

This view of the evidence is, however, strenuously combated by the appellant's counsel, who points to the direct and emphatic estimony of the plaintiff upon this point as follows: "Have been in the state over seven months. This is my residence, and I intend to remain here. I have no other residence or home." Plaintiff further testified that she had resided at Fargo, N. D., two months, and the rest of the time had lived at Wahpeton, N. D. Plaintiff's counsel, in referring to plaintiff's intentions with respect to her residence, say in their brief: "And on that point, (viz: her intentions as to the future) there cannot be, in the nature of things, any evidence but her own direct testimony as to what her intentions are unless it be shown that she at some time had expressed her intention to leave her present domicile, or her lack of intention to remain within the state for an indefinite period or any period after a trial of this action." We cannot yield assent to this proposition of counsel. In any case where intent is necessary to be ascertained, it must be gathered, not alone from the evidence of the party whose intentions are being investigated, but from all concomitant facts bearing upon the question. The most direct and positive statements of intention may be entirely overthrown and disproved by circumstances showing that the statements are untrue. If the rule of evidence contended for by counsel should obtain in the courts, a guilty intent could be disproved in a criminal case by the testimony of the accused to the effect that he had no guilty intent whatever. But in divorce cases it is well established that upon the question of residence the testimony of the plaintiff, while competent, is not conclusive. Nor is the same, when judicially considered, deemed as persuasive evidence as plaintiff's conduct. See 10 Am. & Eng. Enc. L. (2d Ed.) p. 29, and cases cited; *Keith* v. *Stetter*, 25 Kan. 100; and particularly Bish. Mar., Div. & Sep. § 103.

It appears that plaintiff reached Wahpeton, N. D., on the 12th day of November, 1898, and also that the complaint in this action bears date February 9, 1899, or just eighty-nine days after her arrival in the state. True, the action was not commenced by the service of the summons until February 17, 1899. But such promptness manifested by a newcomer in instituting an action for divorce is regarded by the courts as a strong circumstance bearing upon

the question of the bona fides of the residence. See 2 Bish. Mar., Div. & Sep. § 103. With reference to the question of domicile, the plaintiff further testified: "I made up my mind to stay here permanently in December some time. It agreed with me so well. I began to be more quiet. I liked it very well, and made up my mind to stay. Before this I didn't expect to stay, because I didn't know anything about it. This was before I came back the second time. I made up my mind to stay the early part of December." From this evidence it is clear that plaintiff instituted her action prematurely, and in less than 90 days after she had established a domicile in this state. Until some time in December, 1898, plaintiff "didn't expect to stay." But, if she did not expect to remain in this state prior to December, she could not have been domiciled here prior to December. The acquisition of a new domicile implies and necessitates, not only physical presence in the new place of residence, but likewise a present intention to dwell there for an indefinite period as a home. Domicile cannot be initated by the mere bodily presence of an individual in a given locality, in a case where one leaves his place of domicile with no purpose of establishing a permanent home elsewhere. A mere tour in quest of health or pleasure, or any transient object, undertaken without thought of taking up elsewhere a new and permanent place of abode, cannot operate to destroy one's domicile in his original home.

But we are satisfied from the evidence that plaintiff came to this state only for a divorce, and with a purpose of returning to her Eastern home at once after the divorce was granted. It appears that plaintiff has no children, and is entirely without domestic ties in this state. Her father resides at the East, and, being a man of large means, provides liberally for the plaintiff's support, and did so before she came west, and has done so ever since she has been in North Dakota. No adequate reason is suggested by the evidence why plaintiff should leave her old home, with all its ties and associations, and take up her abode within our borders, other than the fact that the delict upon which she predicates her right to a divorce is not a ground of divorce in the State of New Jersey, from whence she came, and is a ground in this state. Under the issues, the plaintiff has the burden of showing domicile in this state, and this burden cannot be sustained, where the evidence reveals no purpose on plaintiff's part other than that of procuring a divorce in the shortest possible time, to be followed by a prompt return to her former home. It appears that plaintiff's furniture and books are stored in the State of New Jersey, and have never been brought into this state. Her father and brother testify that they did not know that she had come to this state to reside for the purpose of procuring a divorce or for any purpose. When she left the East, viz: Newark, N. J., she gave the lady with whom she boarded to understand that she was going to New York, and when she departed she left her large trunk and her furniture in her room at Newark, and took only a small trunk with her. Plaintiff returned

to Newark for a short time in December, 1898, and when she was about to return to North Dakota she stated to one witness, Miss H., that she could not tell where she was going, but that she would be gone only three or four months. This same witness further stated as follows: "I am sure that Mrs. Graham told me that she was going to North Dakota to get a divorce, and that she was coming back when she got it." But we will not pursue the details of the evidence further. It has been carefully considered by all members of the court, and we are all agreed that the plaintiff failed to show that she was domiciled in this state prior to the commencement of this action. The judgment must be affirmed. All the judges concurring.