CONNOLLY, Respondent, v. CONNOLLY, Appellant.

(146 N. W. 581.)

1. **Divorce—Jurisdiction—"Actual Residence in Good Faith"— "Domicile."**

Under Laws 1907, Ch. 132, Sec. 1, requiring plaintiff in an action for divorce to have been an "actual resident, in good · faith, of this state for one year," held, that mere physical presence within the state is not enough; such statutory requirement being the equivalent of "domiciled in this state for one year;" "domicile" being the place in which, both in fact and intent, the home of a person is established, without any purpose to return to a former home.

2. **Same—Jurisdiction in Divorce Suit—Residence—Insufficiency of Evidence.**

Evidence, in an action for divorce by a wife who had left

the family home in Wisconsin and come to this state to find employment and to assist in earning money with which to pay a mortgage on the homestead in Wisconsin, **held,** insufficient to sustain a finding that at beginning of the action she had been "an actual resident, in good faith, of this state for one year," under Laws 1907, Ch. 132, Sec. 1; and trial court was without jurisdiction over the parties.

(Opinion filed March 21, 1914.)

Appeal from Circuit Court, Perkins County. Hon. CLAY CARPENTER, Judge.

Action by Olive Connolly against Cornelius B. Connolly, for divorce. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and action ordered dismissed.

*Mahoney & Schubert,* and *P. J. Tscharner* and *W. D. Hickman,* for Appellant.

The court did not have jurisdiction to enter the judgment. Section 1 of Chapter 132 Laws of 1907.

The "residence" required by the Statute above cited means "domicile" and not merely actual residence. Smith v. Smith 7 N. D. 404; Graham v. Graham 9 N. D. 88, 81 N. W. 44; Smith v. Smith 10 N. D. 219; 2 Bish. on Marriage, Divorce and Separation, P. 52 and numerous citations, Pars. 106-107; 14 Cyc. of Law & Pro. 835-836 and cases cited.

Domicile is the place in which, both in fact and intent, the home of a person is established, without any purpose to return to a former home. 2 Bish. on Marriage, Divorce and Sep., Par. 88, P. 43; Wharton Conflict of Laws, Section 223; Smith v. Smith 7 N. D. 404, 75 N. W. 783.

The "domicile" of the wife is at the place where husband has his "domicile" and remains there until she leaves him and acquires a separate domicile in a legal manner. 2 Bish. on Marr., Div. and Sep. Sec. 97 and Sec. 112 et seq.; 9 Am. & Eng. Enc. 738.

*R. J. Murphy,* for Respondent.

SMITH, P. J. Action for divorce on the ground of habitual intoxication and failure to support. Judgment was entered October 30, 1912, granting plaintiff an absolute divorce, awarding her custody of the children, and setting off to her certain real property in this state. From the judgment and an order denying motion for a new trial, defendant appeals.

Appellant assigns as error insufficiency of the evidence to sustain the findings of the trial court. The finding against which this objection is most strongly urged is "that plaintiff is now, and for more than a year immediately preceding the commencement of this action has been, a bona fide resident of Lemmon, county of Perkins, South Dakota." There is practically no conflict in the evidence relating to plaintiff's alleged residence in this state.

Plaintiff and defendant were married in 1901, and immediately took up their residence in La Crosse, Wis., where they lived together as husband and wife until June, 1911. Defendant was employed as a driver in the city fire department. Some time prior to June, 1911, they purchased a home in La Crosse worth about $3,000, which was incumbered by a mortgage for about $1,600. Apparently this indebtedness was found burdensome, and both plaintiff and defendant were earnestly desirous of earning and saving sufficient money to lift it. Plaintiff seems to have had some experience in nursing or as a nurse, and it was arranged between herself and husband that she, with the two children, should go to Lemmon, in this state, where her father and mother were then living, and there secure employment as a nurse, and thus assist in raising money to pay the indebtedness against the home in La Crosse. In the meantime defendant was to continue his employment in the fire department in La Crosse, to earn and save whatever he could. With this understanding, plaintiff left La Crosse in June, 1911, and came to Lemmon.

The printed record does not disclose when this action was begun; but it was tried on the 18th day of October, 1912. Defendant answers, denying the matters alleged as ground of divorce, and specifically denying that the plaintiff had been an actual resident, in good faith, of the state of South Dakota for one year immediately preceding the commencement of the action. Plaintiff herself testified to the agreement with her husband as to the purpose for which she came to this state in June, 1911, admitted that she returned to La Crosse in April, 1912, for a visit of a week or ten days, during which time she lived and cohabited with her husband, and admitted writing numerous letters to her husband, which were received in evidence, and are in the printed record. These letters contain many expressions

of affection for her husband, and of a desire to return to her home at La Crosse.

In a letter written in October, 1911, she says: "I will be home some time the last of this week or first of the following. * * * Hope you can be home the night I get home and meet me at the train. * * * I will be glad to see you and get a good loving."

In March, 1912, she wrote her husband: "I expect to be home about Saturday or Sunday, unless I get out on another case, so have the lights, gas, and water on."

In January, 1912, she wrote: "How much money have you saved? and, if I have enough to finish to make the $500, I believe I will come home for theh rest of the winter. If I don't go home with Pa, there are some things I want you to send me."

On January 26, 1912, she writes: "And find out when the next promotion is, and maybe I will come home so the boys can start the new term."

In a letter written in November, 1911, she says: "Well, I am disappointing you again, as I am going on a surgical case in the morning, * * * so don't look for me until you see me, as I will stay as long as work keeps up."

On March 22, 1912, she writes: "I just received your letter, and am sorry to see you have rented the home. Now, I want that house left as it was till I get there. Not one thing touched, or there will be trouble. I came on this case to make money so as to get so much more paid on it, and this is a downright dirty trick of you to rent it until I come home."

In September, 1911, she wrote: "I have been very sick. Hurt my sore side and have a very hard cold. If you will send me money to come home on, I will as soon as I get it. I am anxious to get home, as there is nothing doing here, and no prospect of any, so will have to try something else. You better get some coal in, so you can have a fire in the house when we come, as we all had bad colds."

Again, in September, 1911, she writes: "I would like to write a lot, but don't know what to write. Only wish I was home, and that I hadn't come out, but will stick for a while and do the best I can."

Many other similar expressions are found scattered through the various letters. Up to May 27, 1912, not one of numerous letters contains any suggestion of a purpose on her part to become a permanent resident of this state, or to terminate their relations as husband and wife. On that day, which must have been very near the time this action was begun, she wrote as follows: "You say you are lonesome for us folks. Well, Con, guess you will have to get consolation from your dear sister, as I am never going back to you, and the boys don't want to, and so you and she can console each other from now on as you have in the past. Any time you want to come and see the boys, you are welcome to, or any time they want to see you they can go; but you and I have played our last game."

The statute of this state, as amended by section 1. c. 132, Laws of 1907, provides: "The plaintiff in an action for divorce, must have been an actual resident, in good faith, of this state for one year, and of the county * * * for three months, next preceding the commencement of said action."

[1] Under this statute mere physical presence within the state is not enough. The words "actual resident, in good faith, of this state for one year" are the equivalent of "domiciled in this state for one year." As defined by Bishop, "domicile is the place in which, both in fact and intent, the home of a person is established, without any purpose to return to a former home." 2 Bishop on Marriage and Divorce, § 88; Smith v. Smith, 7 N. D. 404, 75 N. W. 783; Graham v. Graham, 9 N. D. 88, 81 N. W. 44; Smith v. Smith, 10 N. D. 219, 86 N. W. 721.

[2] It is perfectly clear that the finding of the trial court that plaintff, at the time of beginning this action, had been "an actual resident, in good faith, of this state for one year" is not only against the clear preponderance of evidence, but is without any support whatever in the evidence. It follows that the trial court was without jurisdiction, that the court erred in overruling appellant's motion for a new trial, and that the findings, conclusions, and decree should be reversed, and the action dismissed.

It will be so ordered.