CHARLES A. SMITH *vs.* CORA A. SMITH.

Opinion filed May 1, 1901.

**Divorce—Admissions in Answer—Conclusiveness—Residence of Plaintiff.**

> In an action for a divorce, an admission in defendant's answer that plaintiff's residence in this state was bona fide when the action was commenced *held* not to conclude the court from examining the plaintiff as to his residence. Evidence examined, and *held* not to show bona fide residence within the state when the action was commenced.

Appeal from District Court, Cass County; *Pollock,* J.

Action by Charles A. Smith against Cora A. Smith. Judgment for defendant, and plaintiff appeals.

Affirmed.

*M. A. Hildreth,* for appellant.

The defendant, by her answer, admitted the marriage and the residence of the plaintiff as set forth in the complaint. The defendant, therefore, is not at liberty to raise an issue as to plaintiff's residence, which she has closed by the admission in the answer. Whart Ev. 1110; *Paige* v. *Willet,* 38 N. Y. 28; *Myrick* v. *Bill,* 17 N. W. Rep. 268; *Fleishman* v. *Stein,* 90 N. Y. 110; *Walrod* v. *Bennett,* 6 Barb. 144; *Ballow* v. *Parsons,* 11 Hun. 662. A judgment contrary to the admission of the pleadings must be set aside. *Getty* v. *Towne,* 46 Hun. 1; *Budge* v. *Passon,* 5 Sanf. 210; *Campo* v. *Lassen,* 67 Cal. 139; *Burnett* v. *Stearns,* 33 Cal. 469; *Silvy* v. *Neary,* 59 Cal. 97; *Manley* v. *Hallock,* 55 Cal. 94; 1 Rice on Ev. 228.

*Turner & Lee,* for respondent.

(No brief on file.)

MORGAN, J. This is an action for a divorce from the bonds of matrimony. The complaint states two grounds for such divorce, viz.: desertion and extreme cruelty. The complaint also states "that for more than ninety days last past, and prior to the commencement of this action, the plaintiff has been, and now is, a bona fide resident of the state of North Dakota." The defendant interposed an answer denying the desertion and the extreme cruelty set forth in the complaint, and admitting in terms the marriage of the parties and the bona fide residence of the plaintiff in the state of North Dakota. At the trial in the court below, the defendant appeared in court by her attorneys only. They did not participate in the proceedings by a cross-examination of the plaintiff or otherwise. The trial court dismissed the action upon the sole ground that the plaintiff was not a bona fide resident of the state of North Dakota. The plaintiff excepted to such dismissal, and appeals to this court, demanding a review of the entire case. There is no appearance on the part of the respondent in this court.

At the close of plaintiff's direct examination by his attorney, during which examination he had not been asked anything concerning his residence, nor had he testified concerning the same, the court asked him this question: "Where do you live?" Plaintiff's attorney objected to the question, alleging as grounds that it was not proper cross-examination, incompetent, irrelevant, and immaterial and upon the ground that the answer admitted the residence. The objection was overruled by the court, after which the examination continued at length. The question of law thus raised is, what is the effect of an admission on the record by the defendant of the residence of the plaintiff, so far as the parties or the court are concerned? If the action were any other civil action, affecting the rights of the parties only, it may be admitted that any admission in the answer of any fact in the complaint would be the equivalent of proof of such fact, and such would be true of any fact alleged in the complaint not controverted by the answer. Section 5292, Rev. Codes. An admission in the answer of the sufficiency of the plaintiff's residence in the state to enable him to maintain his action and secure a decree presents a very different question. It is generally, if not universally, held by the courts of this country that residence in the state for the prescribed time before commencing an action for a divorce is jurisdictional. This court has so held in two cases. *Smith* v. *Smith*, 7 N. D. 404, 75 N. W. 783; *Graham* v. *Graham*, 9 N. D. 88, 81 N. W. 44. In the Smith case, cited, the court says, in substance, that a divorce granted in this state to one not a good-faith resident of the state would be without binding force in other jurisdictions; and the principle thus announced is sustained by courts generally, if not universally. *Thelan* v. *Thelan*, (Minn.) 78 N. W. 108; Black, Judgm. § 930; Freem. Judgm. § 580; *Dunham* v. *Dunham*, 162 Ill. 589, 44 N. E. 841. In *Smith* v. *Smith*, supra, this court says, "The statute requiring residence, which means domicile, for a period of ninety days, as preliminary to starting an action for a divorce, is jurisdictional to the subject-matter." Residence must be established to have been within the letter and spirit of the statute before the action was commenced, or the court acquires no jurisdiction of the subject-matter of the action. The appearance of the defendant would not supply such want of jurisdiction. Her consent that the court proceed with the trial without inquiry as to plaintiff's residence would be binding upon her, perhaps, but upon no one else. Nor would her admission in her answer of plaintiff's residence confer upon the court any jurisdiction in this respect. That must be obtained by the plaintiff bringing himself strictly within the terms of the statute. It is against the policy of the law that divorces be decreed by consent of the parties immediately interested. It is likewise against the policy of the law that courts should grant divorces to any applicants save bona fide residents of this state. It is for this reason that courts are not restricted in their judicial inquiries as to facts in issue under the pleadings in divorce cases. This question

has often been before the courts, as the following extracts will show: "In every divorce suit, the state, for the enforcement of its policy concerning the marital relation, constitutes the third party, and no admission can be made by the other parties which will affect the public interest." *Prettyman* v. *Prettyman,* 125 Ind. 149, 25 N. E. 179. "An averment in the complaint for a divorce that the applicant has been six months a resident of this state, and a failure to deny the averment in the answer, does not do away with the necessity of proving residence." *Bennett* v. *Bennett,* 28 Cal. 600. See, also, *Schmidt* v. *Schmidt,* 29 N. J. Eq. 496, and 7 Enc. Pl. & Prac. p. 88, tit. "Divorce." We therefore reach the conclusion that the admission of residence in the answer was not the admission of such an issuable fact as dispensed with the necessity for proof on that subject.

We also have no difficulty in reaching the conclusion that it was the right and the duty of the trial court to inquire of the plaintiff concerning his residence. In divorce cases the plaintiff and defendant are not the only interested parties. The state is interested. The citizens of this and other states are interested that no divorce shall be granted that is not sustained by well-founded jurisdiction. This court has said in *Smith* v. *Smith,* supra: "In a divorce case, the sovereign state is always present as a party in the action,—not technically, but actually and potentially, a party. The state, represented by the court, is there to see to it that no mere transient inhabitant, whose domicile is elsewhere, shall call upon the courts of this state to adjudicate upon the marital relations of citizens of other states or nations. To do so would not only be without results, except as a purely local affair, but would be a gross violation of the comity of states, and one directly calculated to lead to much social and domestic discord, and unhappiness to the innocent parties directly concerned in the action." We adopt this language of the present chief justice as directly applicable to actions of this nature. In *Moore* v. *Moore,* 41 Mo. App. 176, it is said: "In such case there are, as has been said, three parties to the action,—the plaintiff, the defendant, and the public. It is to the interest of society at large to guard against sundering that relation which is its chief foundation. 2 Bish. Mar., Div. & Sep. § § 229-231, 234, 236, 238. So far as a defendant would be concerned, as a matter of right, which he may assert, he would be perhaps concluded by his pleading; but there is a maxim in these suits 'that a cause is never concluded against the judge.'" Precedents are ample and the principle clear that the court is not restricted by the pleadings in passing upon divorce cases, and that it has full power to inquire concerning matters not raised by the pleadings or matters admitted by the pleadings, that it may correctly determine as to its jurisdiction, as well as to determine whether the immediate parties to the suit are not acting collusively to obtain a divorce practically by consent.

We now come to the merits: Does the evidence show that

plaintiff was a bona fide resident of this state when he commenced his action? We observe that such residence must be established by clear and convincing proof. Residence for divorce purposes alone would be insufficient, although, if he came for other purposes, but intended to and did actually become a permanent resident with the intention of permanently remaining here, the fact that he incidentally intended to obtain a divorce would not defeat his action. No pretended residence, nor temporary visits, nor actual bodily presence, simply, nor a sojourn here for business purposes, as an incident to further his plans for a divorce, will suffice. He must have abandoned his former home, and must have actually established one here, with the purpose of permanently retaining it. "Residence," in contemplation of the divorce laws, is synonymous with "domicile," and must be adopted as permanent. *Smith* v. *Smith,* supra. From the abstract we gather the following facts concerning his residence here: He came to Fargo about June 18, 1898. Remained at Fargo two weeks. Went to Bismarck from Fargo, and remained there until the fore part of September. Then went to Grand Forks. Remained there and at surrounding towns until December. Soon after December 21st, at which date the summons was served, he went to Chicago, remaining a week, when he went to Buffalo, and remained there and at Niagara Falls until the fall of 1899, when he came back to Fargo, remaining a week. He then left for Buffalo again, and remained there until July, 1900, when he came to Fargo, remaining a week, and returned to Buffalo, where he remained until he returned to Fargo on September 30, 1900, and applied for his divorce on October 1st. He states that he came to North Dakota originally, having heard that it was a good place for his business,— that of penman or card writing. He states that he never voted while away, and came here intending to make it his permanent home, and had no other abode since coming here. He stated on his examination on October 1st that he intended locating in Bismarck, as he thought there was an opening for him there. He says he came back here on those two occasions to engage in his business. He had a place of business in Buffalo, but not the same place during all this time. We do not find that he had any stated place of abode in North Dakota since he came to Fargo. He says his home was in Fargo most of the time since 1898. When the summons was served, it is doubtful whether he was a legal voter in North Dakota. There is not one fact shown by the evidence indicating that he adopted any place in this state as his permanent abode. He says it was his intention to make this his home, but that cannot control, alone. We look for facts showing or tending to show such intention. Some corroboration as to residence we deem essential. Section 2757, Rev. Codes. It is true that, if he was a bona fide resident here on December 21st, his going back to engage in his business, only, would not alone cause him to lose his residence here. But we are not satisfied that he was a good-faith resident in December, 1898,

and his actions since strongly support the view that he was not. There is no explanation given of his coming back to Fargo on the two occasions mentioned, except that he came to follow the same business. It seems incredible that a person would come from Buffalo to follow the business of card writing in Fargo for one week. If he did, that business must be very remunerative. It is not improbable that he returned to Fargo to keep up the appearances of actual residence. We are not at all convinced that he ever acquired a residence here of that permanent nature required under the rule applicable in this class of cases. Judgment affirmed. All concur.